SULLIVAN, Justice,
for the Court:
Henry Jerome Armstrong was indicted for possession of a schedule two controlled substance and as an habitual offender in violation of Miss.Code Ann. § 99-19-83 (Supp.1992). He was tried and convicted in the Circuit Court of Lauderdale County, Mississippi, and sentenced under the habitual offender statute to life imprisonment without parole.
Armstrong appeals to this Court and assigns as error:
1. The indictment failed to allege that the defendant had served separate terms of one year or more in a penal institution, as is essential to life imprisonment sentence under § 99 — 19—83;
2. The court erred when it declared that the indictment was properly amended by a de facto amendment made by the court in announcing the beginning of the sentence hearing;
3. The court below erred in failing to order a continuance until defense witnesses could be located and available for questioning before the jury;
4. The court below erred in refusing to allow the defendant to develop a defense theory and in refusing to allow Bilbo Mitchell to be questioned before the jury;
5. The court below erred in failing to grant the defense motion in limine prior to the hearing on the motion for a new trial;
6. The court below erred in allowing the hearing on the motion for a new trial to be heard on a guilt/innocence basis rather than on the question of the existence of newly discovered evidence which, with due diligence, could not have been discovered prior to the trial and which, if believed by *89 the jury, would probably result in a different verdict;
7. The court below erred in refusing to grant a new trial based on newly discovered evidence;
8. The court below heard improper evidence during the sentencing hearing;
9. Assuming that the defendant was properly indicted for violation of Section 99-19-83, the evidence presented during the sentencing hearing failed to prove, beyond a reasonable doubt, that the defendant had been sentenced to and served separate terms of one year or more;
10. The court below erred in giving the sentence of life without parole without engaging in a proportionality analysis under the Eight Amendment of the United States Constitution, and therein being guided by objective criteria, including harshness of the penalty, sentences imposed on the criminals of the same jurisdiction and sentences imposed for the commission of the same crime in other jurisdictions; and
11. The verdict of the jury was against the overwhelming weight of the evidence.
ASSUMING THAT THE DEFENDANT WAS PROPERLY INDICTED FOR VIOLATION OF SECTION 99-19-83, DID THE EVIDENCE PRESENTED DURING THE SENTENCING HEARING FAIL TO PROVE, BEYOND A REASONABLE DOUBT, THAT THE DEFENDANT HAD BEEN SENTENCED TO AND SERVED SEPARATE TERMS OF ONE YEAR OR MORE?
Armstrong complains that the evidence presented by the State during the sentencing hearing failed to prove beyond a reasonable doubt that Armstrong had been sentenced to and had served separate terms of one year or more on each of his prior convictions. In this contention Armstrong is correct.
Sentencing as an habitual offender under Miss.Code Ann., § 99-19-83 shall be vacated where the State at trial proves that the defendant has two felony convictions but fails to prove that the defendant actually served one year or more on each conviction. Ellis v. State, 485 So.2d 1062 (Miss.1986).
At the sentencing hearing James Graham, Assistant Chief Records Officer of the Mississippi Department of Corrections, testified that:
Q. The truth is nowhere in this record does it indicate how much time he served for either of the different sentences, does it? No notations in there about what time was served for what; it’s just dates and times?
A. (Graham) That’s correct ...
Q. What does the word “consecutive” mean?
A. That it is to follow afterwards.
Q. After what?
A. After the sentence that he is serving.
Graham testified that Armstrong was received at the Department of Corrections on August 23, 1983, on a five year sentence for a robbery conviction. Armstrong was to become eligible for parole on November 23, 1984.
On September 1, 1983, Armstrong escaped from the Department of Corrections and was not captured and returned until February 3, 1984. On February 20, 1985, Armstrong was sentenced to one year for the escape charge. Armstrong was actually released on parole from the Department of Corrections on November 14, 1986.
The time period between when Armstrong entered the Department of Corrections and the date of his additional sentence, excluding the period of escape, was one year, five months and twenty-seven days. The custody time period from the date of the additional sentence to the final parole was one year, eight months and twenty-four days.
Graham testified that Armstrong was paroled on the same day for both the charge of escape and the charge of robbery. However, he also said that the Department of Corrections’ Records did not specify when Armstrong finished serving time on the *90 robbery charge and began serving time on the escape charge.
Armstrong was not serving concurrent sentences but was serving consecutive sentences.
Graham could not establish from the prison records whether the additional year served by Armstrong after he was sentenced for escape was actually time served for the escape charge. The State concedes that the record does not indicate when Armstrong’s robbery sentence ended but claims that the record does show that Armstrong was paroled on both charges on November 14, 1986.
In this case, the record contains at least two major inconsistencies concerning Armstrong’s previous sentences for robbery and escape. At one point, James Graham, the Assistant Chief Records Officer at Parchman, testified as follows:
Q. My question is how long did he serve on the robbery charge?
A. Approximately one year, eight months and four days.
Q. How did you come up with that determination?
A. The difference between the sentence begin date of 8/23/83 and his earliest possible parole date which was 4/27/85.
Shortly thereafter, Graham was questioned on when Armstrong completed his prison sentence on the robbery charge and began to serve his sentence on the subsequent escape charge. Graham testified as follows:
Q. If one sentence begins at this point and ends at this point and these points are the same and you don’t know where this point is, how in the world do you know where this one is? You don’t, do you? You can’t prove that can you?
A. Are you asking if I can prove when he finished robbery and started on the escape?
Q. Yes.
A. The way the records work, I can’t say that.
The inconsistencies in the record admittedly do not reflect whether prior to parole Armstrong finished serving the robbery sentence and began to serve the escape sentence. Under our holdings in both Taylor v. State, 426 So.2d 775 (Miss.1983), and Ellis, the State has failed in its burden of proving that Armstrong actually served one year or more on each sentence.
It was therefore error for the trial court to sentence Armstrong as an habitual offender under Miss.Code Ann. § 99-19-83.
No other assignment of error raised by Armstrong is meritorious.
Armstrong’s conviction of unlawful possession of cocaine is affirmed, but his life sentence without parole as an habitual offender under Miss.Code Ann. § 99-19-83 is reversed and this cause is remanded to the Circuit Court of Lauderdale County for re-sentencing.
CONVICTION OF UNLAWFUL POSSESSION OF COCAINE AFFIRMED; SENTENCE OF LIFE WITHOUT PAROLE AS AN HABITUAL OFFENDER UNDER MISS.CODE ANN. § 99-19-83 IS REVERSED AND THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF LAUDERDALE COUNTY FOR RESEN-TENCING.
HAWKINS, C.J., DAN M. Lee and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.