# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00469-SCT

*TONY SWINNEY a/k/a TONY DESHAUN*
*SWINNEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEYS: | BRYAN P. BUCKLEY |
| | CHRISTOPHER TODD McALPIN |
| | WESLEY THOMAS EVANS |
| | MICHAEL GUEST |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; VACATED IN PART AND REMANDED - 01/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. On April 2, 2015, Audrey Swinney drove her brother Tony Swinney and their cousin LaMarvin Swinney to rob Bullets, a convenience store in Flora, Mississipppi. Tony and his cousin LaMarvin entered the store and robbed Pyare Lal, the seventy-three-year-old

proprietor of the store.

¶2.    On May 6, 2015, a grand jury indicted Tony for robbery with an enhancement for a crime committed against a victim of sixty-five years of age or older, and conspiracy to commit robbery.  On October 27, 2015, a Madison County jury found Tony guilty on both counts.  The trial court sentenced Tony as a habitual offender under Mississippi Code Section 99-19-83 (Rev. 2015), to life in prison without the possibility of parole or early release for each count, with the sentences to run concurrently.

## ISSUES

¶3.    Tony appeals, raising the following issues:

I.     Whether the trial court erred in sentencing Tony to life imprisonment as a habitual offender.

II.    Whether the trial court erred in failing to declare a mistrial where the State elicited testimony of Tony exercising his constitutional right to remain silent.

III.   Whether the multiple instances of hearsay evidence attributing guilt to Tony denied him a fair trial.

IV.    Whether testimony by a state witness of having been in prison with Tony was improper evidence of other bad acts.

V.     Whether the jury was improperly instructed by instruction peremptorily directing that a robbery occurred and that a witness was an accomplice, thereby relieving the State of its burden of proof.

VI.    Whether counsel for Tony was ineffective.

VII.   Whether the multitude of error herein, if held individually to be harmless, constitutes cumulative error.

## FACTS AND PROCEDURAL HISTORY

¶4. On the morning of April 2, 2015, Audrey picked up her cousin LaMarvin and her brother Tony. While in the car, the three made a plan to rob Bullets convenience store. They planned that LaMarvin would put an item on the counter so the cashier would open the register, tackle the cashier, and take the money from the register. Meanwhile, Tony would destroy the surveillance video footage. Audrey would serve as the getaway driver.

¶5. Audrey, Tony, and LaMarvin arrived at the store around 9:00 a.m. Tony and LaMarvin entered the store. Because too many people were outside, Tony and LaMarvin exited the store and returned to the vehicle. Audrey drove away and they waited across the street. About twenty minutes later, they returned to the store's parking lot and pulled up to one of the gas pumps. Tony and LaMarvin remained with the vehicle, and Audrey got out as if she were going to pump gas. Lal did not turn on the pump. Audrey got back in the vehicle and drove away.

¶6. About fifteen or twenty minutes later, Tony and LaMarvin returned and entered the store. LaMarvin placed an item on the cashier's counter. When Lal opened the register, LaMarvin rushed around the counter and tackled Lal to the ground. LaMarvin grabbed money from the register while holding Lal down. Meanwhile, Tony went into Lal's living quarters behind the counter. When Tony came back out, he and LaMarvin exited the store. Audrey picked up Tony and LaMarvin beside the store and they left the scene.

¶7. Lal called the police, and Flora's Assistant Police Chief Clifton Nelson responded. Lal reported that $500 had been taken from the register, $200 from a stand near the register, and $1,500 from a bank deposit bag located in Lal's living quarters, for a total of $2,200.

Chief Nelson reviewed the store's surveillance video showing the robbery. The surveillance video of the robbery was shown to the jury at trial. Chief Nelson learned from a witness at the scene that two males, matching the appearance of the two robbers depicted in the surveillance video, ran and got into a blue Honda near the store after the robbery.

¶8.     Lal could not identify Tony or LaMarvin; however, Lal identified the driver of their vehicle as Audrey Swinney. Audrey was Lal's former employee, whom he had terminated for theft. Upon the information gathered by Chief Nelson, Audrey was developed as a suspect in the robbery. That afternoon, Audrey voluntarily appeared at the police station and agreed to be interviewed. Audrey denied any involvement in the robbery at Bullets and was released. Before Audrey left the police station, Chief Nelson took photographs of Audrey's vehicle, a blue Honda matching the witness's description given at the scene.

¶9.     On April 6, 2015, a warrant was issued for Audrey's arrest. Audrey agreed to be interviewed a second time. During the interview, Audrey said that Eric Jackson and Milton Deemus were the two males with her at the store the day of the robbery. Audrey posted bond and was released. Eric Jackson and Milton Deemus were arrested the next day. After Eric Jackson was arrested, his brother Joshua Jackson came forward with information implicating Tony in the robbery. Joshua Jackson claimed that he had overheard Audrey, Tony, and Milton Deemus planning to rob Bullets days prior to the robbery. Milton Deemus provided an alibi. Eric Jackson and Milton Deemus later were released.

¶10.    Chief Nelson issued an arrest warrant for Audrey for impeding the investigation. Audrey was arrested and interviewed a third time. Audrey stated that the individuals she had

previously named as assisting her in the robbery were incorrect. Audrey stated that her brother Tony and her cousin LaMarvin assisted her in the robbery. At trial, LaMarvin admitted that he, Audrey, and Tony had planned and carried out the robbery of Bullets. LaMarvin identified himself and Tony as the two males depicted in the surveillance video robbing Lal.

¶11. During a recess of Tony's trial, Audrey pleaded guilty to robbery. The State did not call her to the stand to testify. After the State rested its case in chief, Tony rested without testifying and without putting any witnesses on the stand.

¶12. The jury returned a verdict finding Tony guilty of robbery of a person of the age of sixty-five years or over and conspiracy to commit robbery. On November 2, 2015, the trial court conducted a sentencing hearing. The trial court sentenced Tony as a habitual offender under Section 99-19-83 to life imprisonment without the possibility of parole or early release on both counts, with each sentence to run concurrently with the other.

## STANDARD OF REVIEW

¶13. Tony raises several arguments for the first time on appeal. "Generally, a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred." *Parker v. State*, 30 So. 3d 1222, 1227 (¶ 15) (Miss. 2010). As a result, Tony asks the Court to review the arguments raised for the first time on appeal under the plain error doctrine.

¶14. "The plain error doctrine is employed only in situations when a defendant's substantive or fundamental rights are affected." *Green v. State*, 183 So. 3d 28, 31 (¶ 6)

5

(Miss. 2016). "Plain-error review is properly utilized for correcting obvious instances of injustice or misapplied law." *Id*. "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Hall v. State*, 201 So. 3d 424, 428 (¶ 12) (Miss. 2016).

¶15.   "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Conner v. State*, 138 So. 3d 143, 151 (¶ 19) (Miss. 2014).   "Prejudice often is lacking when the weight of the evidence against a defendant is overwhelming." *Hall v. State*, 201 So. 3d at 428 (¶ 12).

## ANALYSIS

### I.    Habitual Offender

¶16.   First, Tony argues that the trial court erred by sentencing him as a habitual offender under Section 99-19-83, because the State failed to prove that Tony had served two terms of confinement of a year or more for his prior felony convictions.  Second, Tony argues that the State failed to prove that at least one of his previous felony convictions had been a crime of violence as required by Section 99-19-83.  The Court does not reach Tony's second argument because it is undisputed that the State failed to prove that Tony served two terms of confinement of a year or more for his prior felony convictions.

¶17.   Both Tony and the State agree that the Court should vacate his sentences and remand for resentencing because there was insufficient proof demonstrating that Tony actually had

6

served a year or more for his prior felony convictions. "An illegal sentence is an obvious error subject to plain-error review." *Martin v. State*, 214 So. 3d 217, 220 (¶ 6) (Miss. 2017). As such, the issue raised for the first time on appeal of whether the State failed to prove his habitual offender status under Section 99-19-83 is reviewable as plain error. *Conner v. State*, 138 So. 3d 143, 150-51 (¶ 19) (Miss. 2014).

¶18. Under "Section 99-19-83, the maximum term of life imprisonment will be imposed if the State can prove beyond a reasonable doubt that the defendant has previously been convicted of two or more felonies on charges separately brought and arising out of separate indictments at different times, that the defendant was sentenced to and served separate terms of one year or more in any state or federal penal institution, and that at least one such felony was a crime of violence." *Long v. State*, 52 So. 3d 1188, 1196 (¶ 26) (Miss. 2011).

¶19. On October 19, 2015, the trial court entered an order granting the State's motion to amend the indictment to charge Tony as a habitual offender under Mississippi Code Section 99-19-83. At the sentencing hearing, the State sought to prove Tony's habitual offender status by offering three collective exhibits into evidence showing Tony's prior convictions and sentences. Each collective exhibit included an indictment, sentencing order, and notice of criminal disposition.

¶20. The first collective exhibit showed that Tony was convicted of attempted escape, occurring on August 24, 2008. Tony was sentenced to one year for the conviction, but the notice of criminal disposition did not show that Tony actually served a term of at least one year. The second collective exhibit showed that Tony was convicted of two counts of

7

burglary of a dwelling occurring on July 30, 2004, and November 23, 2004. Tony was sentenced to six years, with three years to serve and three years suspended, on both counts, with the sentences to run concurrently. The notice of criminal disposition provided an initial confinement date but did not indicate whether Tony actually had served a term of at least one year for either count.

¶21. The third collective exhibit showed that Tony was convicted of burglary of a dwelling, occurring on January 6, 2008. Tony was sentenced to twenty-five years, with fifteen years to serve and five years of post release supervision. The notice of criminal disposition showed that Tony had been confined for at least one year for the conviction.

¶22. An essential element of Section 99-19-83 is that the defendant must have served at least one year under each sentence. *Ellis v. State*, 485 So. 3d 1062, 1064 (Miss. 1986) (*Ellis II*). Here, the State presented insufficient evidence to make the requisite showing under Section 99-19-83 because the collective exhibits did not demonstrate that Tony had been convicted of at least two previous felony convictions and sentenced to and served separate terms of one year or more for each conviction. *See Ellis II*, 485 So. 2d at 1064. "Sentencing as an habitual offender under Miss. Code Ann., § 99-19-83 shall be vacated where the State at trial proves that the defendant has two felony convictions but fails to prove that the defendant actually served one year or more on each conviction." *Armstrong v. State*, 618 So. 2d 88, 89 (Miss. 1993). As such, Tony's sentences must be vacated.

¶23. The State requests that Tony be resentenced under Mississippi Code Section 99-19-81 (Rev. 2015), because the evidence presented at the sentencing hearing met the requirements

of Section 99-19-81. Unlike Section 99-19-83, Section 99-19-81 does not require the serving of any time on the two prior felony crimes. Section 99-19-81 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81.

¶24. In *Smith v. State*, 477 So. 2d 191, 192 (Miss. 1985), the trial court sentenced the defendant to life imprisonment under Section 99-19-83. On appeal, the Court noted that the indictment at issue did not specifically cite under which of the two habitual offender statutes the State was proceeding. *Id.* at 193. Moreover, the indictment did not allege that the defendant had served separate terms of one year or more as required by Section 99-19-83. *Id.* The indictment "clearly notic[ed] the defendant that the [S]tate was seeking only a seven year term [under Section 99-19-81]." *Id.* at 196. The Court reversed the defendant's sentence and remanded to the trial court for proper sentencing under the applicable statute, Section 99-19-81. *Id.*

¶25. Similarly, in *Ellis II*, the Court held that the State had failed to prove the essential element under Section 99-19-83 that the defendant had served at least one year for each of his previous sentences. *Ellis II*, 485 So. 2d at 1064. The Court said "[t]he [S]tate's proof would have only sustained a conviction under [Section] 99-19-81." Therefore, the Court concluded that the case came under *Smith*, and remanded it to the circuit court for

9

"appropriate sentencing." *Id.* The case reached the Court again, and the Court clarified that its remand for "appropriate sentencing" meant that it had remanded to the circuit court for sentencing under Section 99-19-81. *Ellis*, 520 So. 2d 495, 496 (Miss. 1988) (*Ellis III*).

¶26. Here, the evidence presented at the sentencing hearing would have met only the requirements of Section 99-19-81. Accordingly, we vacate Tony's sentences and remand the case to the circuit court for Tony to be resentenced.

## II. Right to Remain Silent

¶27. Tony argues for the first time on appeal that his fundamental right to remain silent was violated when Chief Nelson testified that Tony "declined to interview" upon Chief Nelson's request. The State argues that nothing in the record shows that Tony had received a *Miranda*[1] warning at the time Chief Nelson said he declined to be interviewed. The State argues that Chief Nelson's testimony in reference to post-arrest, pre-*Miranda* silence does not constitute reversible error. Alternatively, assuming the testimony was in reference to post-arrest, post-*Miranda* silence, the State argues that it was harmless error because of the overwhelming evidence of Tony's guilt.

¶28. Tony asks the Court employ plain error review because there was no objection to Chief Nelson's comment. Tony's assignment of error is predicated on the following exchange that occurred during the State's direct examination of Chief Nelson:

COUNSEL FOR THE STATE:

Q.   So after -- after your discussions with LaMarvin Swinney, the minor
     involved, who was the other defendant?

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

10

A.     I -- I attempted to offer an interview to Tony.  Tony declined to interview.

CO-COUNSEL FOR THE STATE:

Excuse me, Your Honor.  I'm sorry, Your Honor.

COUNSEL FOR STATE:

I'm going to restate the question, Your Honor.

COUNSEL FOR THE STATE:

Q.     After your conversation with or your interview of the -- of the minor, did that pretty much conclude your investigation in this matter?

A.     Yes.

¶29.   "An accused has the right to remain silent, guaranteed by the Fifth Amendment to the United States Constitution." *Austin v. State*, 384 So. 2d 600, 601 (Miss. 1980).  "Evidence of post-arrest silence is improper, because it violates the accused's right against self-incrimination." *Id*.  (citing *Miranda v. Arizona*, 84 U.S. 436 (1966)).  "It is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence." *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990).  "The accused's right to be silent then is equally as strong as the right not to testify and it is error to comment on either." *Id*.

¶30.   Chief Nelson's testimony does not indicate whether Tony had been given his *Miranda* warning at the time he "declined to interview[,]" so it is unclear whether Chief Nelson's testimony was referencing Tony's pre-*Miranda* or post-*Miranda* silence.

¶31.   The Court of Appeals has noted a split of authority on whether the introduction of a defendant's post arrest, pre-*Miranda* silence during the prosecution's case-in-chief violates

11

a defendant's Fifth Amendment privilege against self incrimination. *Jenkins v. State*, 75 So. 3d 49, 58 (¶ 24) (Miss. Ct. App. 2011). In *Jenkins*, the Court of Appeals held that the trial court did not commit plain error when it did not, sua sponte, prohibit a police officer from testifying that the defendant had opted to remain silent after he was arrested. *Id*. at 56, 58 (¶¶ 20, 24); *see also Hurt v. State*, 34 So. 3d 1191, 1197, 1199 (¶¶ 17, 21) (Miss. Ct. App. 2009) (holding that a prosecution's comments regarding the defendant's post-arrest, pre-*Miranda* silence did not constitute plain error in light of the significant circuit split on the issue and the current law in Mississippi).

¶32. To the extent that Chief Nelson's testimony referenced pre-*Miranda* silence, the evidence does not constitute plain error because the Court cannot say that the "trial court deviated from a legal rule" or that the error was "plain, clear, or obvious" in light of the split of authority on the issue.

¶33. On the same note, it is not "plain, clear, or obvious" that the testimony actually referenced post-*Miranda* silence. The Court cannot say the testimony resulted in plain error in light of the uncertainty surrounding the timing of when the refusal to make a statement was made. *Green*, 183 So. 3d at 31 (holding plain error review is properly utilized for correcting obvious instances of injustice or misapplied law).

¶34. Furthermore, the State did not intentionally elicit Chief Nelson's comment, and it was not directly responsive to the State's question. Chief Nelson's comment was the sole reference over the course of Tony's trial regarding his choice to remain silent, and the State did not suggest to the jury that Tony was guilty because he declined to interview. We discern

12

no manifest miscarriage of justice or that the fairness, integrity, or public reputation of the judicial proceeding was seriously affected. *See Hall*, 201 So. 3d at 428 (¶ 12).

### III. Hearsay

¶35. Tony argues that "multiple instances of hearsay evidence" going directly to the elements of the charges denied him a fair trial.

¶36. "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R. Evid. 801(c). "Admission or suppression of evidence is based on the discretion of the trial court, but the trial court's discretion must be consistent with the Mississippi Rules of Evidence." *Franklin v. State*, 136 So. 3d 1021, 1028 (¶ 22) (Miss. 2014). "Reversal is required only where abuse of that discretion can be shown to cause prejudice to the defendant." *Id*. "When determining whether a statement is prejudicial, th[e] Court has established an objective test asking how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Id*. at 1029 (¶ 26) (citations and quotations omitted).

¶37. Tony first takes issue with Chief Nelson's "narrative of the robbery of Bullets as he believed it had happened" even though he was not there. Tony claims that Chief Nelson "was iterating Lal's testimony, but with detail and in chronological order." Tony's trial counsel objected twice to Chief Nelson's testimony as to what Lal had reported to him. The trial court overruled the first objection. Following the second objection, the trial court asked the parties to approach the bench, and it directed the State to guide Chief Nelson through its

13

questioning, in a way so as to avoid hearsay.

¶38. "Primarily, hearsay testimony obtained by an officer in conducting an investigation is inadmissible." ***Bridgeforth v. State***, 498 So. 2d 796, 800 (Miss. 1986). "The conversation of an informant is generally inadmissible as hearsay where it is a part of the State's development of its proof on the merits in a criminal case, but not in other circumstances where probable cause for an arrest or search is at issue." ***Swindle v. State***, 502 So. 2d 652, 657 (Miss. 1987).

¶39. "It is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into the details of it." ***Id***. at 658. Moreover, "[a] statement is not hearsay if it is offered merely to show its effect on someone." ***Gillett v. State***, 56 So. 3d 469, 504 (¶ 98) (Miss. 2010); *see also* ***Franklin***, 136 So. 3d at 1029 (¶ 23) (holding that a statement obtained by a police officer was not offered to prove the truth of the matter asserted but to prove why the police officer acted as he did.). Here, the trial court did not abuse its discretion in allowing Chief Nelson's testimony of what Lal had reported to him because it was offered to show why he acted the way he did during the course of his investigation.

¶40. Tony argues that, after the trial court cautioned the State against eliciting hearsay testimony, Chief Nelson continued to testify to hearsay statements without objection. The failure to object to hearsay operates as a waiver of the issue on appeal:

> When the hearsay goes into evidence without objection, the trial court has no opportunity to evaluate the proffered testimony under M.R.E. 803(24), or any other exception. Thus, the failure to object to hearsay operates as a waiver of the issue on appeal. [The defendant] made no hearsay objection to [the]

> Officer['s] testimony, and therefore, his objection is procedurally barred for failure to object.

*Rubenstein v. State*, 941 So. 2d 735, 764 (¶ 113) (Miss. 2006). Tony has waived the issue on appeal for failing to object. Because Tony failed to object to the alleged improper hearsay testimony, he relies on the plain error doctrine. *Parker,* 30 So. 3d at 1227 (¶ 15). Tony claims that the multiple instances of hearsay evidence alluding to his guilt, which were introduced without objection, denied his right to a fair trial.

¶41. Tony first points out that Chief Nelson testified that the car from the surveillance video was a blue Honda, information he learned from a third party. The Court has held that "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time[.]" *Id.* at 657-58. Chief Nelson's testimony arguably was not hearsay and does not constitute plain error.

¶42. Tony also points out that Chief Nelson relayed statements given by Audrey, implicating Tony in the robbery. Chief Nelson testified that LaMarvin agreed to go along with the robbery because he was scared of Tony due to his violent behavior. Chief Nelson testified that LaMarvin's statement was "pretty much the same" as Audrey's third and final account of the robbery. Chief Nelson testified that Joshua Jackson had told him that he had overheard Audrey, Tony, and Milton Deemus planning the robbery.

¶43. The State contends that the statements were offered to show why Chief Nelson acted as he did in developing suspects in the robbery. *See Gillett*, 56 So. 3d at 503-04 (¶ 98). We agree with the State that Chief Nelson's testimony did not constitute inadmissible hearsay, because he testified about what he did and learned over the course of his investigation,

15

including why he took certain steps. *See Rubenstein*, 941 So. 2d at 74-65 (¶¶ 111-115). Because the testimony was not hearsay, the admission of the evidence did not result in plain error.

¶44. Tony also takes issue with Joshua Jackson's testimony. Tony argues that Joshua Jackson improperly testified that he had heard Audrey talking about robbing Bullets with Tony and Milton Deemus because she was a former employee of Bullets. The testimony did not prejudice the outcome of the trial because the same testimony had been offered through Chief Nelson without objection when he was describing why he took certain steps during the course of his investigation into the robbery. *Conner*, 138 So. 3d at 151.

### IV. Evidence of Other Bad Acts

¶45. Tony argues that the State purposefully elicited improper testimony of a witness indicating that Tony had been charged with a crime and had spent time in jail with the witness. On direct examination, Joshua Jackson testified:

> Q. All right. Now, how long have you known Tony Swinney?
>
> A. A long time.
>
> Q. All right. Have y'all ever had trouble?
>
> A. One time.
>
> Q. All right. How long ago?
>
> A. About a couple of years ago when we was locked up together.

¶46. Rule 404(b) of the Mississippi Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,

16

however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, that upon request by the accused, the prosecution shall provide reasonable notice in advance of trial, or during trial if the military judge excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Miss. R. Evid. 404(b).

¶47. Because no objection was made, the Court must employ plain error review. *Parker*, 30 So. 3d at 1227 (¶ 15).

¶48. The Court disagrees with Tony's claim that the State purposefully elicited the testimony. The State's question sought to determine whether animosity existed between Joshua Jackson and Tony. Joshua Jackson's response that he and Tony had been locked up together was an unsolicited response to the State's question.

¶49. In *Watson v. State*, 521 So. 2d 1290, 1293-94 (Miss. 1988), the Court held that a similar "fleeting, unexplained reference" to prior jail time served by the defendant was not reversible error. In *Watson*, the State asked the witness whether she had recently had contact with the defendant. *Id*. at 1294. The witness responded, "He's come by the office where I work, but we didn't really talk. He was just telling me he was out of jail[.]" *Id*. The defense objected and moved for a mistrial, which was denied by the trial court. *Id.* The Court held that the answer was not responsive to the question and there was no purposeful effort or intent by the State to elicit such information from the witness. *Id*. at 1294. The Court also held that, assuming the answer constituted error, certainly it was harmless error. *Id*.

¶50. The lone "fleeting, unexplained" reference to prior jail time did not constitute reversible error and was at most harmless error. *See id*. at 1293-94. The reference did not

17

result in plain error because it did not result in a manifest miscarriage of justice or seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Hall*, 201 So. 3d at 428 (¶ 12).

### V. Jury Instruction

¶51. Tony argues that Jury Instruction Six, which instructed the jury, in part, that LaMarvin was an admitted accomplice, was improper. Tony contends that the instruction was peremptory in nature because it relieved the jury of its function of fact finding, specifically, that a robbery had occurred and LaMarvin was an accomplice.

¶52. Tony did not object to the jury instruction. Consequently, "the issue is without merit as it is procedurally barred." *Smith v. State*, 835 So. 2d 927, 939 (¶ 34) (Miss. 2002). Again, Tony argues that the instruction resulted in plain error.

¶53. Jury Instruction Six read:

> The Court instructs the jury that La'Marvin Swinney is an accomplice in this case and the uncorroborated testimony of an accomplice is to be considered and weighed with great care, caution and suspicion. You may give it such weight and credit as you deem it is entitled.

¶54. "The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole." *Wilson v. State*, 967 So. 2d 32, 36 (¶ 11) (Miss. 2007). Here, the trial court instructed the jury on every essential element of robbery and conspiracy to commit robbery. The trial court also instructed the jury that if the State had failed to prove any one or more of all of the essential elements of robbery and conspiracy to commit robbery beyond a reasonable doubt, it should find Tony not guilty. Thus, contrary to Tony's claim, the State was not relieved of its burden of proof.

¶55. The Court has approved similar cautionary instructions regarding accomplice testimony:

> The Court instructs you that the testimony of an admitted accomplice should be viewed by you with great care, caution and suspicion and you should give it such weight and credit as you deem it is entitled.

*Smith v. State*, 907 So. 2d 292, 297 (¶ 27) (Miss. 2005) (citing *Rosenthall v. State*, 844 So. 2d 1156, 1160-61 (¶ 17) (Miss. 2003)). More recently, in *Jones v. State*, 203 So. 3d 600, 611-12 (¶ 35) (Miss. 2016), the Court has approved the use of the following accomplice jury instruction:

> During the course of his testimony in this trial, the witness John Doe claimed to have participated with the defendant in [the crime for which the defendant is on trial]. Doe is an admitted accomplice, and, as such, the jury should consider his testimony with great caution and suspicion. The jury is the sole judge of the credibility and the believability of all the witnesses, and it is for the jury to decide how much weight and worth, if any, to give the testimony of the witnesses, including Doe. As you consider Doe's testimony, you may accept such portions, if any, that you deem credible, and reject such portions, if any, that you do not deem worthy of belief.

*Jones*, 203 So. 3d at 611–12 (¶ 35).

¶56. LaMarvin testified that he had planned and participated in the robbery with Tony. In light of nearly identical cautionary jury instructions approved by the Court regarding accomplice testimony, the jury instruction at issue did not amount to any error, much less plain error. What is more, Tony argues, albeit under different assignments of error, that the case is "wholly dependant upon the inherently untrustworthy testimony of an accomplice" who "cut a sweet-heart deal for [his] testimony." The jury instruction, routinely requested by defendants, was favorable to his defense as it instructed the jury that LaMarvin's

19

testimony was "to be considered and weighed with great care, caution and suspicion." As such, Tony certainly was not prejudiced by the instruction that coincided with his defense. The assignment of error is without merit.

## VI. Ineffective Assistance of Counsel

¶57. Tony argues that he did not receive constitutionally effective assistance of counsel at trial. Tony argues that his trial counsel allowed the errors alleged in issues I through V, by failing to object to the State's proof of Tony's habitual offender status, Chief Nelson's comment on Tony's right to remain silent, Chief Nelson's and Joshua Jackson's hearsay testimony, Joshua Jackson's testimony that Tony had been in jail, and Jury Instruction Six.

¶58. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422–23 (¶ 18) (Miss. 2015). The Court addresses ineffective assistance of counsel claims on direct appeal only where "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶ 12) (Miss. 2016).

¶59. "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶ 4) (Miss. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Secondly, a defendant must prove

20

that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

¶60. The Court strongly presumes that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. *Id*. at (¶ 5). Thus, defense counsel is presumed competent, and even where professional error is proven, the Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id*.

¶61. Tony argues that his counsel was ineffective for failing to contest the evidence offered by the State at sentencing to prove his habitual offender status. However, Tony's counsel contested Tony's habitual offender status under Section 99-19-83 on grounds that his prior convictions did not constitute crimes of violence. The ineffective assistance claim based on the failure to contest Tony's habitual offender status under Section 99-19-83 now is moot because the Court is vacating the sentences and remanding for resentencing due to plain error on separate grounds. *See Smith*, 477 So. 2d at 196.

¶62. Tony's counsel was not deficient for failing to object or seek a mistrial in response to Chief Nelson's testimony that Tony had declined to be interviewed or Joshua Jackson's testimony about his and Tony's time in jail together. "[D]ecisions such as the decision not to object are considered tactical, and do not rise to the level of ineffective assistance of counsel." *Golden v. State*, 968 So. 2d 378, 390 (¶ 50) (Miss. 2007). The Court has said that

21

"counsel might [have] concluded that an objection would draw attention to the question and answer." *Id.*

¶63. Likewise, Tony's counsel was not deficient for failing to object to the "multiple instances" of hearsay. As previously discussed, Chief Nelson's testimony regarding statements he obtained was offered by the State "merely to show its effect" on how he proceeded with his investigation of the robbery. *See Gillett*, 56 So. 3d at 504 (¶ 98). To the extent testimony was arguably hearsay, "counsel might have many reasons for deciding not to object to a question which is technically objectionable." *Id.* We hold that Tony's counsel was not deficient for choosing not to object, and Tony suffered no prejudice as a result, due to other direct evidence of his guilt.

¶64. Tony's counsel was not deficient for choosing not to object to Jury Instruction Six. The instruction was favorable to Tony's defense, i.e., that LaMarvin's testimony as an admitted accomplice should be received with "great care, caution and suspicion." As previously discussed, the favorable jury instruction did not prejudice Tony.

¶65. For the foregoing reasons, Tony's claim for ineffective assistance of counsel is without merit.

## VII. Cumulative Error

¶66. Tony argues the cumulative effect of the alleged errors at trial, in their aggregate, serves as a basis for reversal. In cases where the Court discerns harmless error or error that is not reversible in and of itself, we have discretion to determine on a case-by-case basis whether the errors require reversal due to the resulting cumulative prejudicial effect. *Parker*

22

*v. State*, 30 So. 3d 1222, 1235 (¶ 50) (Miss. 2010).

¶67.    At most, harmless error existed due to Chief Nelson's testimony that Tony had declined to be interviewed and the fleeting, unexplained reference to Tony's prior stint in jail. However, considering the circumstances of the present case and the overwhelming evidence of guilt, any cumulative effect of the two harmless errors does not require reversal.

## CONCLUSION

¶68.    The Court affirms Tony's convictions, vacates the sentences, and remands the case to the Circuit Court of Madison County for resentencing.

¶69.    **AFFIRMED IN PART;  VACATED IN PART AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**