# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00592-COA

JAMES LEE COOPER                                          APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/23/2024 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR SARVER |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/26/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     James Lee Cooper appeals his convictions in the Harrison County Circuit Court of one count of sexual battery and one count of touching a child for lustful purposes.  He was sentenced to life in prison and a concurrent term of fifteen years in custody.  On appeal, Cooper argues that the circuit court erred in admitting hearsay testimony and in refusing his proposed jury instruction.

¶2.     After our review, we find no error.  We therefore affirm Cooper's convictions and sentences.

## FACTS

¶3. Cooper was indicted for one count of sexual battery and one count of touching a child for lustful purposes stemming from the sexual assault of his stepdaughter, K.F.[1] According to K.F., Cooper began sexually abusing her in 2000 when she was ten years old.

¶4. In 2017, when K.F. was in graduate school in Missouri, she sought counseling services from her school's student health department for anxiety and depression. K.F. testified that she felt anxious and depressed because she was worried about her niece, who lived next door to Cooper. K.F. explained that, at the time, her niece was ten years old—the same age as K.F. when Cooper began abusing her—and K.F. did not want Cooper to abuse her niece.

¶5. K.F. was eventually referred to Laura McMurry, a licensed clinical social worker who specialized in trauma. McMurry provided trauma therapy to K.F. from 2017 through 2020. McMurry testified that during their first session, K.F. disclosed to McMurry that she had suffered trauma, but K.F. provided no further details. However, in September 2017, during her third or fourth session with McMurry, K.F. finally disclosed that Cooper had sexually abused her. In January 2018, at McMurry's encouragement, K.F. disclosed the abuse to her mother.

¶6. In March 2019, K.F. reported the abuse to law enforcement. Detective Eli Zacharias of the Long Beach Police Department investigated K.F.'s report. During his investigation, Investigator Zacharias discovered three more victims Cooper sexually abused when they were minors. Cooper was eventually arrested and indicted for sexual battery and touching

---

[1] K.F. was a minor at the times of the alleged sexual abuse, and we use initials in place of her name.

a child for lustful purposes.

¶7. Cooper's trial was held in June 2022. At trial, the jury heard testimony from K.F., McMurry, Detective Zacharias, and three women who testified that Cooper had sexually abused them when they were approximately the same age as K.F. Cooper also testified in his own defense and denied sexually abusing K.F. and the three other women.

¶8. After the trial, the jury returned a verdict finding Cooper guilty of one count of sexual battery and one count of touching a child for lustful purposes. The circuit court sentenced Cooper to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for his sexual battery conviction and fifteen years in the custody of the MDOC for his conviction of touching a child for lustful purposes. The circuit court ordered both sentences to run concurrently. After the denial of Cooper's posttrial motions, this appeal followed.

## DISCUSSION

### I. McMurry's Testimony

¶9. Cooper first argues that the circuit court committed plain error in admitting hearsay testimony from McMurry without first finding that the testimony was trustworthy or met the requirements of the hearsay exception. Based on this alleged error, Cooper asserts that he is entitled to a new trial.

¶10. As stated, K.F. sought counseling for anxiety and depression, and she was eventually referred to McMurry, a trauma specialist. McMurry testified at trial regarding her treatment of K.F. for anxiety, depression, and trauma. McMurry also testified that during a treatment

session, K.F. disclosed that Cooper had sexually abused her. During McMurry's testimony, defense counsel objected out of concern that McMurry's testimony was crossing over from lay testimony to expert testimony. The circuit court overruled the objection. McMurry continued testifying, and defense counsel made another objection. The circuit court addressed this objection at an unrecorded bench conference.

¶11. After McMurry finished testifying, the circuit court made a record of Cooper's objections, noting that they had been addressed at the bench. The circuit court clarified that the State did not intend to call McMurry as an expert but, rather, sought to admit her testimony as an exception to the rule against hearsay:

> THE COURT: All right. At the beginning or near the beginning Ms. McMurry's testimony the defense objected and the attorneys approached the bench. So the objection from the defense at that time was that it appeared that [the prosecutor] was about to get into some expert testimony or some opinion testimony and that Ms. McMurry had not been designated as an expert. Is that correct, [defense counsel]?
>
> [Defense Counsel]: Yes, Your Honor.
>
> THE COURT: And at that time [the prosecutor] advised he had no intent to tender Ms. McMurry as an expert or to ask her any opinion questions. The discussion then went on. [Defense counsel] basically said, are you putting her on as a hearsay exception[,] which [the prosecutor] acknowledged he was. And so based on that the court overruled the objection but with, of course, the caveat that [the prosecutor] was simply asking questions about [McMurry's] observations, her treatment of the victim, et cetera. Is that accurate . . . ?
>
> [Defense Counsel]: Yes, Your Honor.

4

¶12. The trial transcript fails to explicitly state which hearsay exception the State relied on to present McMurry's testimony. However, on appeal, both parties agree that the State relied on Mississippi Rule of Evidence 803(4). Rule 803(4) provides an exception to the general hearsay rule for statements that are made for the purpose of medical diagnosis or treatment:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

MRE 803(4).

¶13. Cooper acknowledges that he failed to raise a specific hearsay objection to McMurry's testimony, and as a result, this issue is procedurally barred. *Swinney v. State*, 241 So. 3d 599, 605 (¶13) (Miss. 2018). Therefore, Cooper must rely on the doctrine of plain error to raise the issue on appeal. *Id*. We recognize that "[t]he plain error doctrine is employed only in situations when a defendant's substantive or fundamental rights are affected." *Id*. at (¶14). The Mississippi Supreme Court has explained that "[f]or the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Id*. at 606 (¶15)

5

¶14. Turning to address whether the circuit court plainly erred by admitting McMurry's testimony, we recognize that the supreme court has established "a two-part test for admitting hearsay statements under [Rule] 803(4). First, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on in treatment." *Wilson v. State*, 96 So. 3d 721, 727 (¶16) (Miss. 2012) (quoting *Branch v. State*, 998 So. 2d 411, 414 (¶10) (Miss. 2008)). Here, Cooper argues that the circuit court failed to make an on-the-record assessment of the trustworthiness and circumstances of McMurry's hearsay statements before allowing them into evidence, and this failure amounts to plain error. Cooper maintains that K.F.'s sexual-abuse disclosures to McMurry were "not necessary for the treatment of [K.F.'s] trauma disorder." He further asserts that the admission of this testimony prejudiced his defense by bolstering K.F.'s testimony and explaining K.F.'s failure to report the abuse for almost twenty years. Additionally, Cooper claims that McMurry's testimony regarding K.F.'s symptoms (depression, anxiety, flat affect, etc.) prejudiced the jury against Cooper while evoking sympathy for K.F.

¶15. Our review of the transcript does not reflect any on-the-record assessment by the circuit court regarding whether K.F.'s motive in identifying Cooper as her abuser was "consistent with the purposes of promoting treatment" or whether the content of the statement was "such as is reasonably relied on in treatment." *Wilson*, 96 So. 3d at 727 (¶16). However, this Court has held that "the failure to make an affirmative finding under . . . Rule 803(4) . . . does not warrant an automatic reversal." *Carpenter v. State*, 132 So. 3d 1053,

6

1057 n.2 (Miss. Ct. App. 2013) (quoting *Anthony v. State*, 23 So. 3d 611, 619 (¶38) (Miss. Ct. App. 2009)). In so holding, this Court explained that a circuit court's ruling "should not be reversed for failure to affirmatively find trustworthiness pursuant to Rule 803(4) . . . [when,] taking the record as a whole, there is sufficient evidence to support a finding of trustworthiness[.]" *Id.*

¶16. After reviewing McMurry's testimony and the record, we find sufficient evidence supports a finding that K.F.'s statements to McMurry were consistent with the purposes of promoting treatment and that K.F.'s disclosure to McMurry that Cooper sexually abused her is the type of statement reasonably relied on in treatment. Our Court and the supreme court have held that "[s]tatements made by a child sexual abuse victim concerning the acts of sexual abuse, along with the identity of the perpetrator, are reasonably pertinent to treatment and are reasonably relied upon by physicians in diagnosis and treatment." *Davis v. State*, 878 So. 2d 1020, 1024-25 (¶14) (Miss. Ct. App. 2004) (quoting *Doe v. Doe*, 664 So. 2d 1199, 1206 (Miss. 1994)); *see also Eakes v. State*, 665 So. 2d 852, 866-67 (Miss. 1995) ("Given the premise underlying the 'medical history/diagnosis' exception to the hearsay rule, i.e., that patients do not lie to their doctors when requesting treatment, a statement that one has been sexually abused, as well as any identification of the perpetrator, is reasonably pertinent to treatment and, therefore, reasonably relied upon by a treating physician."). The record contains sufficient evidence to support a finding that K.F.'s statements to McMurry were made for the purpose of medical diagnosis or treatment, and the statements did not constitute inadmissible hearsay. We therefore find no plain error.

7

## II.    Jury Instruction

¶17.    Cooper also argues that the circuit court erred in refusing to give jury instruction D-7. Cooper maintains that jury instruction D-7 provided a proper statement of the law and was not adequately covered by other jury instructions.

¶18.    "This Court reviews the grant or denial of proposed jury instructions for an abuse of discretion." *Pitts v. State*, 291 So. 3d 751, 755 (¶17) (Miss. 2020).  When we review a challenge to a jury instruction on appeal, "this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Barnes v. State*, 348 So. 3d 974, 982-83 (¶12) (Miss. Ct. App. 2022).  If all jury instructions, when read as a whole, "fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. at 983 (¶12).

¶19.    The record reflects that Cooper offered jury instruction D-7, which states: "The [c]ourt instructs the jury that the uncorroborated testimony of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence."  During the jury instructions conference, the circuit court considered jury instruction D-7 in conjunction with the State's proposed jury instruction, S-10, which states: "The [c]ourt instructs the jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact."  The State informed the circuit court that the language in proposed jury instruction S-10 had been repeatedly approved in decisions on appeal. However, defense counsel argued that jury instruction D-7 should be given instead, explaining that the specific language in the

instruction was helpful because defense counsel anticipated that Cooper's trial testimony would contradict and possibly discredit the testimonies of K.F. and the three other women who testified that Cooper sexually assaulted them. After hearing arguments from the parties, the circuit court ultimately gave jury instruction S-10 after finding that it accurately stated the law, thus allowing the jury to assess K.F.'s credibility.

¶20. When reviewing challenges to jury instructions containing language nearly identical to that of the two jury instructions at issue in this case, the supreme court and this Court have found, after reviewing the jury instructions as a whole, that the language used in both instructions gave accurate statements of the law. *See Pitts*, 291 So. 3d at 757-58 (¶¶30-34) (instructing the jury "that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact" is "an accurate statement of the law"); *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006) (reiterating that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence"); *Adame v. State*, 401 So. 3d 204, 207, 209 (¶¶17, 31) (Miss. Ct. App. 2025) (instructing the jury that "the unsupported word of the victim of a sex crime is enough to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence . . . reflects an accurate statement of the law" and "did not constitute an improper comment on the weight of the evidence"); *Barnes*, 348 So. 3d at 982-83 (¶¶11-14) (approving instruction to the jury that "the unsubstantiated and uncorroborated testimony of a victim of a sex crime is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by

9

other credible evidence" as a correct statement of the law); *Bliss v. State*, 326 So. 3d 1000, 1005 (¶¶17, 21) (Miss. Ct. App. 2021) (approving instruction to the jury that "the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact" as an accurate statement of the law and not an improper comment on the weight of the evidence). Moreover, this Court has described the language used in jury instructions S-10 and D-7 as "similar." *Barnes*, 348 So. 3d at 983 (¶13); *see also Pitts*, 291 So. 3d at 757-58 (¶34). As asserted by the State in its appellate brief, "[t]he instructions effectively say the same thing." In such cases, "a trial judge is not required to give instructions covered by other instructions, although the language may differ." *Martin v. State*, 266 So. 3d 652, 667 (¶35) (Miss. Ct. App. 2018).

¶21. In reviewing the jury instructions as a whole, the record reflects that the circuit court in the present case instructed the jury (1) "not to single out one instruction alone as stating the law but to consider these instructions as a whole"; (2) that as the "sole judge of the facts in this case," the jury held "exclusive province to determine what weight and what credibility to assign the testimony and supporting evidence of each witness in this case"; and (3) "not to single out any certain witness or individual point or instruction and ignore the others." *Bliss*, 326 So. 3d at 1005 (¶20). The circuit court also "informed the jury of the elements required for sexual battery [and touching a child for lustful purposes] and the State's burden to prove every element beyond a reasonable doubt." *Id.* As in *Bliss*, we find that "[w]hen read as a whole, . . . the jury instructions given here 'fairly announced the law of the case and created no injustice.'" *Id.* at (¶21) (quoting *Pitts*, 291 So. 3d at 757 (¶33)).

¶22. After reviewing relevant caselaw and the jury instructions as a whole, we find that the circuit court did not abuse its discretion in giving jury instruction S-10 instead of jury instruction D-7.

**CONCLUSION**

¶23. After reviewing the record, we find no error. We therefore affirm the judgment of conviction and sentencing.

¶24. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**