# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-KA-00511-SCT

*GREGORY WALKER a/k/a PEANUT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2019 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| TRIAL COURT ATTORNEYS: | DAVID LYDELL TISDELL |
| | HELEN BAGWELL KELLY |
| | KIMBERLY DENICE McCRAY |
| | ROSHARWIN LEMOYNE WILLIAMS |
| | STEPHANIE ALEXIS BROWN |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/06/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.

### KITCHENS, PRESIDING JUSTICE, FOR THE COURT:

¶1. In February of 2019, Gregory "Peanut" Walker was convicted of one count of fondling and two counts of sexual battery. Walker was sentenced to serve fifteen years on Count I, twenty-five years on Count II, and twenty-five years on Count III. These three sentences were made to run concurrently. Walker now appeals his conviction. He asserts that the evidence was insufficient to support the verdict only on Count II, digital sexual

penetration. Walker contends also that his due process rights and his right to a fair trial were violated because the State adduced testimony regarding Walker's post-*Miranda* silence. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The State responds that the evidence is sufficient to support the verdict on Count II and that Walker opened the door for the State when he testified that he had refused to give a statement to the police. We agree with the State and affirm Walker's conviction.

## STATEMENT OF THE FACTS

¶2. On a night in 2014, Sarah[1] told her maternal grandmother that when Sarah was eleven years old, Peanut assaulted her sexually on several occasions between May 1, 2013, and June 30, 2014. At the time the alleged sexual assaults occurred, Sarah lived with her two siblings and their grandmother on Eight Street in Clarksdale, Mississippi, where Sarah said the crimes had occurred.[2] After Sarah told her grandmother about Peanut, the grandmother telephoned her niece in Chicago, Illinois, to inform her. Some time after she had spoken with her niece, the grandmother called the police.

¶3. On July 24, 2014, Officer Jacob Braxton of the Clarksdale Police Department was dispatched to the residence on Spruce Street in response to a report that a child had been touched inappropriately. Once on the scene, Officer Braxton spoke with the child's mother,

---

[1]To protect the child victim's identity, we have used a fictitious name. Sarah was born January 22, 2002. She was eleven years old in 2013, the year of the alleged assaults. She was seventeen when she testified at trial.

[2]At some point after the alleged assaults occurred, the residence on Eight Street burned down. The grandmother eventually moved to a house on Spruce Street. It was while Sarah was living on Spruce Street that she told the grandmother she had been touched inappropriately by Peanut.

Ruby Smith,[3] and the child's grandmother. Both told Officer Braxton that the man who had sexually assaulted Sarah went by the name Peanut. The case was turned over to Investigator Charles Sledge.

¶4.     Investigator Sledge testified that he became aware of this case in September of 2015.[4] Around that time, Sledge went to the residence on Spruce Street and spoke with the grandmother, who gave Walker's name as a potential suspect.

¶5.     On October 21, 2015, Sledge drove Sarah and her mother to Oxford, Mississippi, where an interview of the child was conducted by the Family Crisis Services of Northwest Mississippi. The interview was conducted by Tomiko Mackey, who testified that during the course of the interview, Sarah told Mackey that Peanut had sexually assaulted her. Through a two-way mirror, Investigator Sledge witnessed the interview and subsequently caused the issuance of an arrest warrant for Walker. Walker was arrested on September 22, 2016.

¶6.     On December 7, 2016, Walker was indicted and charged with one count of fondling (Count I), two counts of sexual battery (Count II and III), and one count of attempted fondling (Count IV)[5]. Count II of the indictment, which is at issue on appeal, alleged

> That Gregory Walker A/K/A "Peanut," . . . did unlawfully, willfully, and feloniously, engage in sexual penetration with [Sarah], a female child under the age of fourteen (14) years and Gregory Walker was twenty four (24) or more months older than the child, by inserting his finger into the vaginal opening of [Sarah].

---

[3]A fictitious name is given the mother to protect the child's identity.

[4]It is unclear from the record why this apparent delay in the investigation occurred.

[5]Count IV later was *nolle prossed* by the State.

¶7.     At trial, the grandmother testified that Walker would visit her house on Eight Street. Sarah's mother and grandmother identified Walker in court as being the person whom Sarah was calling Peanut.

¶8.     Sarah testified at trial that when she was eleven years old and living with her grandmother on Eight Street, she was sexually assaulted by Peanut on at least three different occasions during the summer of 2013.

¶9.     According to Sarah's testimony, the first time Peanut touched her was when she was sitting on a couch watching television. Sarah said that Walker sat on the couch, looked at her, then "put his hand behind a pillow and he put—touch me in my skirt, like, in the inside." Sarah clarified that Walker had specifically touched her butt, her chest, and her private area. The prosecutor asked Sarah whether there had been another incident between Walker and her, to which she responded that "[h]e try to put his stuff in my butt and in my private area." Sarah testified also that on one occasion Walker pulled down her pants and assaulted her with his tongue. Sarah identified Walker as being the individual nicknamed Peanut who sexually assaulted her.

¶10.    Early in the child's testimony, the prosecutor asked a question to which Walker's attorney objected on the ground that the prosecutor was leading the witness. The prosecutor argued that Sarah was a child witness, and the State would have to lead her to some degree. The judge responded, "I'll allow it for now."

¶11.    Further on in the State's case, the prosecutor asked Sarah, "Did he ever take his finger and place it anywhere?" Again, Walker's attorney objected to the State's question on the

basis that the State was leading Sarah, "specifically about the elements of the crime." Before Walker's objection, however, Sarah answered the prosecutor's question, stating "[i]n the inside of my private area." The following then transpired:

> The Court: Do try to give a what happened type of open-ended question.
>
> State: Yes, sir.
>
> The Court: And if you—Let's try that first.
>
> State: Yes, sir.

The State then asked Sarah another series of leading questions:

> State: So you told us about the touching part, right?
>
> Sarah: Yes, sir.
>
> State: And you told us about the other part, right?
>
> Sarah: Yes, sir.

¶12. Walker testified in his own defense. He admitted to being at the grandmother's house on several different occasions. Walker testified that he never was alone with Sarah and claimed repeatedly that he did not commit the alleged acts.

¶13. The following exchange occurred between the prosecution and Walker on cross-examination:

> State: But you heard this child come in and emotionally testify exactly what happened, right?
>
> A: Yes
>
> State: And there is no reason that you can come up with as to why she would make that up; do you, 'cause she had nothing against you, right?

5

A:     I don't – No. I told you from the kiddy stuff. And then [Sarah's grandmother] – I don't know 'cause it's all about [the grandmother] 'cause it's not about me, sir. I mean, it – all this about [the grandmother]. She the one who got the attitude against me, the grudge against me. I mean, she the one who said she saw me all this – ain't none of this just – this stuff be – people be saying took place, sir. I mean, I was seeing [Ruby Smith] all – all along, like, all this stuff even took place and she never approach me about anything. I mean –
And then when the police came to me, he tried to make me testify and give him what he want; if not, he would give me $100,000 bond.

State:  Well, Mr. Walker, you're being a little untruthful because the officer never told you to testify against yourself.

A:     He try and get me to give a open statement. And so he told me – his exact words, since he wasn't gonna – I wasn't gonna tell him anything, he will give me $100,000 bond.

State:  Who was that officer?

A:     Officer – we call him "Evay."

State:  Okay.

A:     And so when it end, we wanted to talk, and he told us, don't worry about it, and just went to question me. And so he say he ain't wanna hear the shit and end that. And they gave me a bond.

. . . .

State:  Let me just make sure I'm clear. You heard about these allegations in 2015; you did nothing, right?

A:     Did nothing.

State:  Serious allegations, right? Then you said that when you went to speak with this officer, that he promise you $100,000 bond to say he –

A:     Uh, uh, uh, no, no, no, no. He – When they got me, interrogated me, they pick me up on my traffic violation and they had took me over there, they said they had a hold, a felony hold to talk to an investigator. Now, this when I had approached Officer Sledge, "Evay." This when I walked in. He was asking me some questions and told me that he

6

needed to know something and I wouldn't give him a statement; that's what I'm talking about. Not no other time, sir. This was interrogation–during interrogation time.

¶14. After the defense rested, the State called Investigator Sledge as a rebuttal witness. The prosecutor asked Sledge whether he had threatened to give Walker a $100,000 bond. In response, Sledge testified that he had attempted to question Walker after he was arrested but that Walker refused to give a statement. Sledge also denied that he had tried to force Walker to give a statement.

¶15. On February 12, 2019, the jury found Walker guilty on all three counts. Walker was sentenced to serve concurrent sentences of fifteen years for Count I, twenty-five years for Count II, and twenty-five years for Count III. Walker filed a motion for judgment notwithstanding the verdict or for a new trial, which was denied on February 27, 2019. Walker now appeals, asking this Court to reverse and render his conviction for Count II and to reverse and remand the remaining counts for a new trial. First, Walker challenges the sufficiency of the evidence for Count II only. Second, he alleges that his right to due process and a fair trail were violated by the State's improper comment on his post-*Miranda* silence.

## STANDARD OF REVIEW

¶16. "When reviewing a challenge to the sufficiency of the evidence, this Court will reverse and render only if the facts and inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' . . . ." *Hughes v. State*, 983 So. 2d 270, 275-76 (Miss. 2008) (internal quotation marks omitted) (quoting *Brown v. State*, 965 So. 2d

7

1023, 1030 (Miss. 2007)). This Court has held that "[w]hen reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019) (citing *Cotton v. State*, 144 So. 3d 137, 142 (Miss. 2014)).

¶17. We have applied the plain error doctrine in cases concerning a prosecutor's comments on a defendant's post-*Miranda* silence. *Swinney v. State*, 241 So. 3d 599, 605-06, 609 (Miss. 2018); *Robinson v. State*, 247 So. 3d 1212, 1226 (Miss. 2018). "The plain error doctrine is employed only in situations when 'a defendant's substantive or fundamental rights are affected.'" *Green v. State*, 183 So. 3d 28, 31 (Miss. 2016) (quoting *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006)). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Swinney*, 241 So. 3d at 606 (internal quotation marks omitted) (quoting *Conner v. State*, 138 So. 3d 143, 151 (Miss. 2014)).

¶18. This Court has held also that "[i]t is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence." *Id.* at 608 (internal quotation marks omitted) (quoting *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990)). "However, this Court has found that such improper comments may amount to harmless error where evidence of the defendant's guilt is overwhelming." *Robinson*, 247 So. 3d at 1226 (citing *Riddley v. State*, 777 So. 2d 31, 35 (Miss. 2000)). "Evidence of post-arrest silence is improper, because it

violates the accused's right against self-incrimination." *Swinney*, 241 So. 3d at 608 (internal quotation marks omitted) (quoting *Austin v. State*, 384 So. 2d 600, 601 (Miss. 1980)).

## DISCUSSION

I. **Walker's sufficiency of the evidence argument is procedurally barred because Walker's attorney failed to obtain a definitive ruling from the trial judge.**

¶19. Walker asserts that the evidence is insufficient to support a guilty verdict for Count II because his trial attorney objected to the only testimony that proved Walker digitally penetrated Sarah, that the trial judge sustained the objection, and that the State failed to reintroduce Sarah's testimony through the proper means. The State responds that the trial court did not sustain Walker's objection but merely advised the State to ask more open-ended questions. Walker's argument is dependent on whether the trial judge sustained or overruled Walker's objection regarding the State's leading question that led to Sarah's testifying that Walker had assaulted her with his finger.

¶20. Early in Sarah's testimony, Walker's attorney objected on the ground that the State was leading the witness. The prosecutor argued that since the witness was a child, the State would have to lead "to some degree[.]" *See Eakes v. State*, 665 So. 2d 852, 869 (Miss. 1995) ("[T]he 'classic example' of a situation ripe for leading questions on direct is where the witness is a child." (citing *Jones v. State*, 606 So. 2d 1051, 1059 (Miss. 1992))). The trial judge allowed the State to lead the witness "for now." The State continued its direct examination of Sarah, which included the following exchange:

State: Okay. Did he ever take his take his finger and place it anywhere?

9

Sarah: In the inside of my private area.

Defense Attorney: Your Honor, I'm going to object to the leading. I mean, he's asking her specifically about the elements of the crime. If she wants to testify to it, that's fine but she needs to do it without him asking leading questions.

The Court: Do try to give a what happened type of open-ended question.

State: Yes, sir.

The Court: And if you — Let's try that first.

State: Yes, sir.

¶21.   Walker asserts that the trial judge's response, "[a]nd if you —[l]et's try that first[,]" was the court's way of sustaining Walker's objection. This Court's precedent establishes that "[i]t is incumbent on the party asserting error to make a contemporaneous objection and obtain a ruling in order to preserve the objection." *Ronk v. State*, 172 So. 3d 1112, 1128 (Miss. 2015) (internal quotation marks omitted) (quoting *Brown v. State*, 965 So. 2d 1023, 1029 (Miss. 2007)). It is not clear whether the trial judge's response sustained or overruled Walker's objection. We find that the trial judge did not make a definitive, on-the-record ruling and that Walker's attorney failed to ask for such a ruling. Because Walker's attorney did not insist that the trial judge make a definitive ruling, this issue has been waived. *See* *Rials v. Duckworth*, 822 So. 2d 283, 288 (Miss. 2002) ("This Court has held that a defendant waives his objection 'where an objection [is] made and a definitive ruling [is] not obtained nor any corrective action requested.'" (alterations in original) (quoting *Walters v. State*, 720 So. 2d 856, 864 (Miss. 1998))); *see also* *Cox v. State*, 183 So. 3d 36, 55 (Miss. 2015) ("[T]his Court repeatedly has held that failure to object contemporaneously at trial waives

10

any claim of error on appeal." (internal quotation marks omitted) (quoting *Gillett v. State*, 56 So. 3d 469, 520 (Miss. 2010))). Therefore, we find that Walker's claim is procedurally barred and that Sarah's testimony in response to the leading question stands.

## II. Post-*Miranda* Silence

¶22. Walker asserts that his right to due process and a fair trial were violated by the State because a prosecution witness, Investigator Sledge, commented on Walker's post-*Miranda* silence. Walker admits that his trial attorney failed to make a timely objection to Investigator Sledge's testimony regarding Walker's refusal to give a statement. Nevertheless, this Court will address Walker's due process argument because "even without a timely objection, reversal may be required when the prosecuting attorney has commented upon the defendant's right not to testify." *Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990) (citing *Livingston v. State*, 525 So. 2d 1300, 1306-07 (Miss. 1988), *overruled on other grounds by Wright v. State*, 958 So. 2d 158 (Miss. 2007)).

¶23. Both the United States Constitution and the Mississippi Constitution recognize a defendant's right against self-incrimination. U.S. Const. amend. V; Miss. Const. art. 3, § 26. The United States Supreme Court has held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). This Court has held that "[i]t is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence. The accused's right to

11

be silent then is equally as strong as the right not to testify and it is error to comment on either." *Quick*, 569 So. 2d at 1199.

¶24.     Walker claims that Investigator Sledge's rebuttal testimony was not limited to rebutting Walker's claim that Sledge had threatened him with a high bond ($100,000) as a means of obtaining a confession from Walker. Specifically, Walker claims that Sledge "exceed[ed] the extended invitation" because Sledge's testimony was not limited to discrediting Walker's earlier testimony; his testimony addressed also Walker's refusal to give a statement. *See Stewart v. State*, 596 So. 2d 851, 853 (Miss. 1992) ("[T]he prosecution's impeachment privilege may not exceed the invitation extended." (citing *Blanks v. State*, 547 So. 2d 29 (Miss. 1989))). Thus, Walker argues that it was plain error for Sledge to exceed Walker's "invitation" and to comment on his post-*Miranda* silence, which constitutes a reversible error under *Quick*.

¶25.     The State asserts that even if Sledge's testimony comments on Walker's post-*Miranda* silence, Walker opened the door for the State by testifying that he did not give a statement to the police. *See Martin v. State*, 970 So. 2d 723, 725 (Miss. 2007) ("It is well-settled that a defendant who 'opens the door' to a particular issue runs the risk that collateral, irrelevant, or otherwise damaging evidence may come in on cross-examination." (quoting *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984))). The State is correct.

¶26.     On cross-examination, the State asked Walker, "[a]nd there is no reason that you can come up with as to why [Sarah] would make that up; do you, 'cause she had nothing against you, right?" In response, Walker said that Sarah's grandmother had a grudge against him.

12

Then, at the end of Walker's response, unsolicited by the prosecution, Walker launched spontaneously into a rambling, unresponsive narrative, which included, "[a]nd then when the police came to me, he tried to make me testify and give him what he want; if not, he would give me $100,000 bond." Following Walker's lengthy commentary, the prosecutor said, "Well, Mr. Walker, you're being a little untruthful because the officer never told you to testify against yourself." Then Walker elaborated and said that Investigator Sledge had threatened him with a $100,000 bond because Walker "wasn't gonna tell him anything."

¶27.  The State called Investigator Sledge as a rebuttal witness. Sledge's rebuttal testimony included the following:

| | |
|---|---|
| State: | Did you have [Walker] or did you question him regarding this particular case? |
| Sledge: | I attempted to question him when he was arrested but he refused to give a statement. |
| State: | Did you try to force him to give you a statement? |
| Sledge: | No. |
| State: | Do you ever force individuals to give you a statement? |
| Sledge: | No. I read them their rights and that's their option. |
| State: | There has been raised a statement or words to the effect of, you didn't wanna hear that shit. Did you say that? |
| Sledge: | I—No, I don't recall saying nothing like that. |
| State: | Also gonna advise you about bond settings on cases. Do you set bonds on a case? |
| Sledge: | I do not. |

State:      Did you, in fact, move for a $100,000 bond on the Defendant in this case?

Sledge:     No.

¶28.     This Court finds that Investigator Sledge's testimony was limited to rebutting Walker's testimony and was not an improper comment on Walker's silence.[6] It is clear from the transcript that Walker's comments regarding his refusal to give the police a statement were generated by Walker, not by the State. *See Johnson v. State*, 666 So. 2d 499, 503 (Miss. 1995) ("[W]here the State 'initiate[s] the matter by eliciting from the defendant the response it later [seeks] to impeach by showing the defendant's prior criminal . . . activities,' the impeachment is impermissible and cause for reversal and remand." (alterations in original) (quoting *Quinn v. State*, 479 So. 2d 706, 708 (Miss. 1985))). Walker opened the door by voluntarily telling the jury of his own volition that he had refused to give the police a statement. *See Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) ("It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial." (citing *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988))). Therefore, we find that the State did not violate Walker's due process rights or his right to a fair trial.

## CONCLUSION

---

[6]On rebuttal, the prosecutor asked Investigator Sledge, "[d]o you ever force individuals to give you a statement?" This question, to which no objection was made, could be seen as a bridge too far by the prosecution if not for the defendant's earlier attack on Investigator Sledge's character. Walker testified spontaneously that Sledge had threatened him with a $100,000 bond, which could cause a reasonable juror to question Sledge's character or his integrity. Therefore, the State's question sought to restore Investigator Sledge's character as an ethical police officer, which, under the circumstances, was permissible.

14

¶29.    This Court finds that Walker's sufficiency of the evidence claim in regard to Count II is procedurally barred. We find also that Walker opened the door for Investigator Sledge's testimony by telling the jury himself that he had refused to give a statement to the police. Accordingly, this Court affirms Walker's conviction and sentence.

¶30.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**