# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01073-COA

ROBERT FITZGERALD SMITH A/K/A ROBERT SMITH A/K/A ROBERT F. SMITH        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2012 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF STATUTORY RAPE AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ELEVEN YEARS TO SERVE, NINE YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, AND TO PAY $500 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED - 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND CARLTON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. A Washington County jury found Robert Smith guilty of statutory rape. Smith filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial,

challenging the weight and the sufficiency of the evidence presented against him during trial. The circuit court denied that motion in its entirety. Smith appeals, arguing that the circuit court erred in denying his motion for a new trial.

¶2.     Finding no error, we affirm.

## FACTS

¶3.     During the weekend of May 31, 2008, through June 1, 2008, B.G.[1] visited her grandmother, Cathy, at Cathy's house. At the time, Smith; Cathy; Smith's sister, Linda; and Linda's son, Brian, all lived in the house, which consisted of a front room; two bedrooms, one of which belonged to Linda and Brian; a bathroom; and several other rooms.[2]   B.G.'s two younger brothers, Joshua and Alex, also visited Cathy that weekend. B.G., Brian, Joshua, and Alex slept in Linda and Brian's room, and Cathy, Smith, and Linda slept in the front room.[3]

¶4.     On Sunday, June 1, which was B.G.'s ninth birthday, B.G.'s mother, Tiffany, picked B.G. up from Cathy's house to take B.G. to B.G's birthday party at a local skating rink. According to Tiffany, B.G. behaved normally on that day, although B.G. stated that she did

_____

[1] The Court of Appeals declines to identify sexual-assault victims. In the interest of the child's privacy, the minor's name and the names of family members have been substituted with initials or aliases.

[2] Cathy, now deceased, was Smith and Linda's mother and B.G.'s biological paternal grandmother. Smith is B.G.'s biological paternal uncle.

[3] It appears that only one bedroom in the house was utilized as a bedroom, and the other rooms were used to store miscellaneous items. Smith and Cathy typically slept in the front room.

not want to visit Cathy's house again unless her older sister accompanied her.[4]

¶5.    Testimony at trial revealed that in December 2008, Tiffany and B.G. visited Dr. Hosan Azomani, a pediatrician, and during that visit, Tiffany informed Dr. Azomani that B.G. had been experiencing irregular menstruation.  Dr. Azomani explained to Tiffany that irregular menstruation was normal for a girl B.G.'s age.  Dr. Azomani did not examine B.G.'s vagina.  Dissatisfied with Dr. Azomani's explanation, on January 27, 2009, Tiffany took B.G. to Karen Fleming, a nurse practitioner.  Tiffany informed Fleming of B.G.'s irregular menstruation and of a foul odor coming from B.G.'s vagina.  Fleming testified that she questioned B.G. about sexual activity, and B.G. initially indicated that no one had "messed with" her.  Fleming stated that she performed a cotton swab of B.G.'s vagina to obtain a specimen for testing.  The test revealed that B.G. had contracted trichomoniasis, a sexually transmitted infection (STI), and that B.G. suffered from bacterial vaginosis.  On January 29, 2009, Fleming called Tiffany and B.G. back to her office to reveal the test results.  According to Fleming, during that office visit, B.G. stated that Smith had "messed with" her the last time she visited Cathy's house—between May 31, 2008, and June 1, 2008.  Fleming instructed Tiffany to take B.G. to the Department of Human Services (DHS) to report the incident.  During trial, on cross-examination, Fleming testified that trichomoniasis is contracted primarily through sexual intercourse, and that on rare occasions, it can be transmitted from a mother to her fetus.

---

[4] B.G. has an older sister who is not Cathy's grandchild and who was not at Cathy's house on the weekend that the incident took place.

¶6.     Velma Phillips, a DHS counselor, testified that she interviewed B.G. on two separate occasions on January 29, 2009.[5] Phillips stated that during the first interview, B.G. informed her that she was raped by Smith when she last visited Cathy's house. According to Phillips, B.G. stated that Smith entered Linda and Brian's room where B.G., Brian, Joshua, and Alex were sleeping, grabbed B.G. by her legs, and took her to another room, where he "licked her where her period was." Phillips stated that B.G. told her that she started crying and told Smith to get away from her prior to Smith hitting her in the head and telling her to "shut up." According to Phillips, B.G. stated that Smith released her when she started crying, that she ran into the bathroom after Smith released her, and that she went into Linda's bedroom to tell Linda about the incident. Phillips testified that, in the second interview, B.G. stated that Smith raped her before he released her and that Smith kicked her in her stomach before walking away. Phillips stated that B.G. informed her that she fell asleep in the bathroom after the incident. In the second interview, B.G. also told Phillips that B.G. went into Linda's room to tell her what happened.

¶7.     After B.G.'s first interview with Phillips, but before the second interview, Tiffany took B.G. to the Washington County Sheriff's Department, where Tiffany informed Lieutenant Evan Smith about the incident. During trial, Lieutenant Smith testified that he did not conduct an interview of B.G. but, pursuant to protocol, scheduled a forensic interview

---

[5] As indicated later in the opinion, Tiffany took B.G. to meet with Phillips for the first interview, and after that interview, Tiffany and B.G. left to meet with someone at the Washington County Sheriff's Department. After Tiffany and B.G. left the sheriff's department, they went back to the DHS office for the second interview with Phillips.

with Angie Floyd, who interviewed B.G. on February 4, 2009.

¶8. Floyd testified that B.G. also informed her that Smith had raped her at Cathy's house. According to Floyd, B.G. stated that Smith had "licked her private part[,] and she also stated that he had touched her private part with his private part[.] [H]e held her down, and then he hit her in the face."

¶9. B.G. testified that she was asleep in Linda and Brian's room when Smith came in, grabbed her hands, and dragged her from the bed. According to B.G., Smith took her into another room, where he removed her clothing and threw her on a bed. There, he "licked her where her period was." B.G. testified that when she tried to escape, Smith punched her in the face and told her to "shut up." B.G. stated that she started crying, and Smith let her go. B.G. also testified that Smith "put his private part in [hers]" before he let her go. She then ran into the bathroom. According to B.G., when Smith saw her the next morning, he told her that he would kill her if she told anyone about the incident. During trial, B.G. could not recall stating that Smith kicked her in the stomach before letting her go, and she could not recall whether it was day or night when the incident occurred, although she remembered that it was dark in the room where the incident took place. In her testimony, Tiffany stated that B.G. informed her that Smith had raped her, and that B.G. had no motive to fabricate such a story.

¶10. Dr. Azomani testified that he saw B.G. on December 11, 2008, and that she complained, for the first time, of irregular menstruation, specifically that she had been menstruating for three weeks. Dr. Azomani stated that he did not notice any active vaginal

5

bleeding or discharge or a fishy odor coming from B.G.'s vagina.

¶11. In his testimony, Smith stated that he did not rape B.G. He also pointed out that test results revealed that he did not have trichomoniasis. During Smith's cross-examination, the State elicited testimony regarding antibiotic treatment Smith received prior to being tested for trichomoniasis.[6]

¶12. On appeal, Smith argues that the evidence consisted solely of B.G.'s contradictory statements that were repeated to the jury by the State's witnesses. Smith insists that B.G.'s contradictory statements, coupled with the absence of any physical evidence connecting him to the crime, show that the jury's verdict is against the overwhelming weight of the evidence, and that a new trial is warranted.

DISCUSSION

¶13. In *Grossley v. State*, 127 So. 3d 1143, 1149 (¶19) (Miss. Ct. App. 2013) (internal citations omitted), we stated:

> A motion for a new trial challenges the weight of the evidence. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict and will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

I. *Inconsistent and Contradictory Evidence*

---

[6] While in jail awaiting legal proceedings on the statutory-rape charge, Smith received antibiotic treatment for a toothache. After receiving the antibiotic treatment, Smith was tested for trichomoniasis, and tests revealed that he did not have the infection.

¶14. Smith argues that B.G.'s "contradictory statements were simply repeated over and over again to the jury through the hearsay testimonies" of Fleming, Phillips, Lieutenant Smith, Floyd, and Tiffany. He insists that "the contradicted testimony, coupled with the total lack of physical evidence," proves that the verdict is against the overwhelming weight of the evidence.

¶15. Despite some inconsistencies, B.G.'s statements—that Smith pulled her from a bed, took her into another room, and raped her at Cathy's house the weekend of B.G.'s ninth birthday—remained consistent. We find that B.G.'s statements were not contradictory. Moreover, it is well settled that "when the evidence is conflicting, the jury [is] the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). This issue is without merit.

   II.    *Lack of Physical Evidence*

¶16. Smith also argues that there was no physical or medical evidence linking him to the crime because he tested negative for trichomoniasis and no evidence of penetration was introduced during trial, other than the testimonies of B.G. and the witnesses who spoke with B.G. during their investigations. However, "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence." *Morgan v. State*, 995 So. 2d 812, 817 (¶17) (Miss. Ct. App. 2008) (quoting *Davis v. State*, 878 So. 2d 1020, 1027 (¶29) (Miss. Ct. App. 2004)).

¶17. Upon review, we cannot say that B.G.'s testimony was discredited or contradicted by

7

credible evidence. Smith takes issue with the fact that the State failed to present physical evidence to show how B.G. could have contracted trichomoniasis from him when test results revealed that he did not have the STI. That Smith tested negatively for trichomoniasis does not prove that he did not have it during the relevant time period, as the State produced evidence that could explain why Smith did not test positive at the time he was tested. Smith also takes issue with the fact that no evidence was presented to show that B.G.'s hymen was broken or that her vagina was an abnormal size for a girl her age. However, physical evidence of sexual penetration is not necessary to secure a conviction in this case. It is sufficient that B.G. testified that Smith penetrated her. *See Williams v. State*, 757 So. 2d 953, 957 (¶17) (Miss. 1999). This issue is without merit.

¶18. After considering the evidence in the light most favorable to the verdict, we find that the verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Accordingly, we affirm the circuit court judgment.

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ELEVEN YEARS TO SERVE, NINE YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, AND TO PAY $500 TO THE CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**