# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00608-COA

LAVORIS D. WILLIS A/K/A IRONMAN A/K/A                    APPELLANT
LAVORIS DARNELL WILLIS A/K/A LAVORIS
WILLIS

v.

STATE OF MISSISSIPPI                                     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2019 |
| TRIAL JUDGE: | HON. SMITH MURPHEY |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/17/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Tallahatchie County grand jury returned a two-count indictment against Lavoris

Willis for possession of contraband (a cell phone) in a correctional facility on July 26, 2017,

and September 1, 2017, respectively, in violation of Mississippi Code Annotated section 47-

5-193 (Rev. 2015). He was also charged as a violent habitual offender under Mississippi

Code Annotated section 99-19-83 (Rev. 2015). A jury convicted Willis of the first count

but acquitted him of the second count.[1] Willis was sentenced to life imprisonment as a habitual offender in the custody of the Mississippi Department of Corrections without eligibility for parole. Willis now appeals, challenging the authenticity, sufficiency, and weight of the evidence, as well as claiming ineffective assistance of counsel. Finding no error, we affirm Willlis's conviction and sentence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In 2017, Willis again found himself an inmate at the Tallahatchie County Correctional Facility. His probation for a burglary conviction in 2007 had been revoked due to new criminal charges against him.[2] Willis was housed in Unit F, Pod N, Cell 103. He was the only inmate assigned to this cell. On July 26, 2017, during security rounds of Willis's pod, correctional officers found Willis outside his cell around 1:00 a.m. At this time of the night, Willis was not supposed to be outside his cell. Jeffrey Jenkins, Facility Captain of the prison, and Chief Security Officer Jason Frazier observed Willis pass something under the closed door of Cell 101 before returning to his cell. Cell 101 housed inmate James Cooper. The two officers entered the pod to investigate, securing the door to the pod. They requested assistance from another officer, who asked Willis to step out of his cell. Willis complied. The officer escorted Willis to the shower area, where a strip-search was conducted. No contraband was found on Willis's person.

¶3.     Captain Jenkins first searched Cell 101 belonging to Cooper. He found a cell phone

---

[1] Because Willis was acquitted of the second count, we will not discuss its facts.

[2] Willis was indicted for first-degree murder, conspiracy to commit aggravated assault with a deadly weapon, and felon in possession of a firearm.

2

in the pocket of Cooper's jacket, which was confiscated. Captain Jenkins then searched Willis's cell and found an envelope containing an LG Verizon Smartphone. He confiscated it as well and exited Willis's cell.

¶4. The LG cell phone was sent to a digital forensic laboratory for analysis. Jared Collins, manager of the laboratory's intelligence and cellular telephone units, performed a physical extraction of the cell phone's information using a forensic software. He typically analyzes approximately 200 cell phones per month. Collins analyzed the results of the extraction and generated a forensic report, which was entered into evidence.

¶5. Collins, who was accepted as an expert witness in the field of mobile forensic examinations, testified that a physical extraction pulls all information off the cell phone's memory chip, even if the information has been previously deleted. He explained that each cell phone has a memory chip in it with several partitions. One of these partitions is "user data," which includes everything the cell phone's user has done on the device, such as text messages, emails, multi-media messages, and photographs. Collins testified that the partitions are always "full" because the cell phone merely overrides older data with newer data; it is not deleted. The forensic software extracts all of the data from this area of the memory chip and creates a readable report.

¶6. Collins testified that the following information was extracted from the LG cell phone. Willis's name was in the "auto-fill" memory of the cell phone. The first name of "Lavoris" and the last name of "Willis" were synced to the cell phone from Google Chrome. SMS text messages and Facebook Messenger conversations were also extracted from the cell phone.

The forensic report showed one such conversation occurred on July 25, 2017, around 7:20 p.m. with a female-named individual.[3] The incoming message asked, "But can I get your name?" The outgoing response was "Lavoris." In another Facebook conversation earlier that day at around 2:30 a.m., an incoming message from another female-named individual to "Diddy" asked, "Aren't u still locked up." "Diddy" responded, "Yep, I'll be out soon." In another instance, an outgoing text message on the afternoon of July 25, 2017, stated, "Pops this [is] iron man give me a call." In addition, nineteen photographs of Willis were extracted from the cell phone, many of which were described by Collins as "selfies." In some of the photographs, Willis is bare-chested, "mugging for the camera," and appears to be smoking something resembling a marijuana joint.

¶7.     Against his counsel's advice, Willis testified in his own behalf. He claimed that he had a cell mate, Cedric Love, on July 26, 2017. Willis testified that he was a "pod porter" who cleaned the zone at night. On the night and time at issue, he was "out on the zone cleaning up." Willis testified that when he went over to Cell 101, Love stayed in Cell 103 and was in the cell the entire time. According to Willis, the envelope that contained the LG cell phone belonged to Love. Willis testified that when the cell phone was discovered, both he and Love were taken to the showers and strip searched.

¶8.     As for the SMS text and Facebook messages, Willis explained that his Facebook account must have been hacked. He also testified his family had access to his Facebook account. Willis offered that the photographs could have "come from anywhere" and were

---

[3] The forensic report showed the outgoing responses were from "DiddyChild TwoTymes."

4

"old." Willis noted his father had been dead since he was a teenager, so "why would [he] say 'Pops'?" Willis denied that his alias was "Iron Man," even though he has the word "Iron" tattooed on his left arm, and "Man" tattooed on his right arm. This fact was pointed out to the jury during the State's cross-examination.

## ANALYSIS

¶9. Willis argues that the digital evidence was improperly authenticated, the State presented insufficient evidence to support the jury's verdict, the verdict was contrary to the weight of the evidence, and his trial counsel was constitutionally ineffective. We shall discuss each issue in turn.

### I. Authentication of the Digital Evidence

¶10. Willis discusses the admission of the digital evidence through the forensic extraction report and expert testimony of Collins within his argument on the sufficiency of the evidence. In response, the State discusses the authentication of the forensic report as a separate issue, arguing plain-error review applies because Willis did not object to the admission of this evidence at trial. *See Davis v. State*, 130 So. 3d 1141, 1145 (¶9) (Miss. Ct. App. 2013) (If a defendant fails to raise an issue at trial, on appeal he may proceed under the "more stringent" plain-error standard.). We find the State's plain-error analysis proper.

¶11. Generally, the admission or exclusion of evidence is reviewed under an abuse-of-discretion standard. *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016). However, "a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." *Starr v. State*, 997 So. 2d

5

262, 266 (¶11) (Miss. Ct. App. 2008) (quoting *Williams v. State*, 794 So. 2d 181, 187 (¶23) (Miss. 2001), *overruled on other grounds by Brown v. State*, 995 So. 2d 698 (Miss. 2008)). "The plain-error doctrine requires a party to prove that an error occurred which 'resulted in a manifest miscarriage of justice.'" *Id.* The appellate court will only invoke the court's discretion to review and correct an error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Davis*, 130 So. 3d at 1145 (¶9) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). "To determine if plain error has occurred, this Court must look at whether the trial court deviated from a known legal rule, whether that deviation created an error which was plain, clear, or obvious, and whether the deviation prejudiced the eventual outcome of the trial." *Starr*, 997 So. 2d at 266-67 (¶11) (citing *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)).

¶12. Mississippi Rule of Evidence 901 governs the authentication of evidence. The authentication requirement for an item of evidence is satisfied if the proponent produces evidence "sufficient to support a finding that the item is what the proponent claims it is." M.R.E. 901(a). The rule provides examples, but not a complete list, of authentication methods. M.R.E. 901(b). "A party must make a prima facie showing of authenticity, and then the evidence goes to the jury, which ultimately will determine the evidence's authenticity." *Smith v. State*, 136 So. 3d 424, 432 (¶18) (Miss. 2014) (citing *Young v. Guild*, 7 So. 3d 251, 262 (¶36) (Miss. 2009)). The Mississippi Supreme Court has determined that "[e]lectronic evidence may be authenticated by the traditional means, and is adequately covered by the current rules of evidence." *Id.* But "the circumstantial evidence that tends

6

to authenticate a communication is somewhat unique to each medium." *Id.*

¶13. Willis, however, points to rulings that "the proponent of certain internet-based evidence must provide 'something more' in order 'to adequately present a prima facie case of authentication.'" *Greene v. State*, 282 So. 3d 645, 648 (¶19) (Miss. Ct. App. 2019) (quoting *Smith*, 136 So. 3d at 432 (¶¶18, 21)). Regarding social-media applications like Facebook, "authentication . . . poses unique issues regarding what is required to make a prima facie showing that the matter is what the proponent claims." *Smith*, 136 So. 3d at 432 (¶19). "Because of the special concerns regarding fabrication, 'the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communications.'" *Id.* at 433 (¶20) (quoting *Campbell v. State*, 382 S.W.3d 545, 550 (Tex. App. 2012)). "A heightened level of authentication is required for electronic evidence in order to satisfy the trial court that the fact finders will receive reliable evidence." *Greene*, 282 So. 3d at 649 (¶19) (citing *Smith*, 136 So. 3d at 432 (¶21)). These heightened rules of authentication, however, are inapplicable here because the digital evidence was not extracted from an internet-based application but directly from the hardware of the cell phone, where the cell phone's user and possessor had stored the information.

¶14. Willis cites *Smith* and *Greene* in support of his argument. Again, *Smith* and *Greene* involve internet-based evidence downloaded from social media. In both cases, the appellate court found that the digital evidence was improperly authenticated and therefore inadmissible, but the error was harmless. In *Smith*, a capital-murder case, the State

introduced Facebook messages purported to be conversations between the defendant and his wife about the couple's fights, the defendant's temper, and problems the defendant had with his wife's child, who was the murder victim. *Smith*, 136 So. 3d at 430 (¶15). The State attempted to authenticate the messages through testimony by the defendant's wife, over the defense's objection. *Id.* at 430-31. The only information actually tying the messages to the defendant was his wife's testimony; thus, the supreme court found the authentication inadequate. *Id.* at 435 (¶26). Because "[c]reating a Facebook account is easy" and the possibility of fabricating an account is high, the Court held "something more" is required to authenticate certain internet-based evidence. *Id.* at 432-33 (¶¶19, 20).

¶15. In *Greene*, the defendant was convicted of possession of a firearm by a felon. *Greene*, 282 So. 3d at 646 (¶1). Before trial, the defendant moved to suppress a photograph and video found on Facebook that purported to show the defendant owned the gun found in his vehicle during a traffic stop. *Id.* at 647 (¶9). The trial court found the Facebook evidence admissible and denied the motion. *Id.* at 648 (¶13). On appeal, this Court held the photograph and video on Facebook were improperly authenticated, but the error was harmless. *Id.* at 646 (¶2). Neither piece of evidence was from an account under the defendant's name, but a different name. *Id.* at 647 (¶9). We determined that the State did not adequately connect the defendant to the Facebook posts through traditional or modern means because it did not have an authenticating witness. *Id.* at 651 (¶31). We found *Smith* analogous, with heightened authentication of internet-based evidence necessary, even though *Smith* dealt with messages, not photographs and videos. *Id.* at 650 (¶28).

8

¶16. This case differs from both *Smith* and *Greene* because the data extracted from the cell phone that was used to convict Willis was not taken from an internet-based application such as Facebook; the data came from the cell phone's hardware (i.e., the memory chip inside the cell phone itself). Therefore, authentication did not require connecting Willis to the digital applications, as in *Smith* and *Greene*. Collins testified, as an expert in mobile forensic examinations, that the information was stored on the cell phone by the person who possessed the phone. This testimony properly authenticated the information contained in the forensic extraction report.

¶17. The following digital evidence was found on the hardware of the cell phone identifying Willis as the possessor of the cell phone. Willis's name and address were contained in the autofill memory of the cell phone's memory chip, which had to be input directly into the cell phone by the possessor of the phone. Numerous photographs of Willis were extracted from the cell phone's memory chip and entered into evidence. One photo shows Willis in "street clothes" in a hallway of what appears to be a hotel, giving a hand signal. The other photographs are selfies of Willis, shirtless and "mugging for the camera." In some of the photos Willis appears to be smoking a marijuana joint.

¶18. Further, text message conversations from two different sources—Facebook Messenger and SMS messages—were extracted from the cell phone's memory chip and contained information linking the cell phone to Willis. This information included his name, the known alias "Iron Man," and reference to his incarceration. Both sources required the user of the cell phone to have input the texts. The Facebook messages showed that on July

9

25, 2017, an outgoing message stated the user's name was "Lavoris," and an earlier conversation with another individual confirmed the user was "locked up." Additionally, an outgoing text message that afternoon identified the user as "Iron Man," Willis's alias. Although Willis denied "Iron Man" was his nick-name at trial, the words were visibly tattooed on his arms.

¶19. At trial, the authentication of the forensic report containing this information was direct and proper. The prosecutor asked Collins if he generated the report, if he recognized the report, and if the report fully and accurately reflected his testimony. Collins responded affirmatively to all queries, and the defense did not object to the admission of the report. Collins also properly authenticated the Facebook Messenger conversation saved on the cell phone's memory.

¶20. In conclusion, the digital evidence was properly authenticated. The trial court did not commit plain error in its admission. Willis presented no error that resulted in a "manifest miscarriage of justice." Further, the trial court did not deviate from any legal rule that prejudiced the outcome of Willis's trial.

## II. Sufficiency and Weight of the Evidence

¶21. Willis argues that because the information from the cell phone and extraction report was improperly authenticated and thus inadmissible, there was insufficient evidence to show he possessed the cell phone. As we have fully discussed the propriety of the digital evidence, we shall now focus on the sufficiency of the evidence regarding Willis's possession of the cell phone.

¶22. When reviewing a case for sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Swanagan v. State*, 229 So. 3d 698, 703 (¶18) (Miss. 2017) (quoting *Fagan v. State*, 171 So. 3d 496, 503 (¶36) (Miss. 2015)). The reviewing court "must accept as true all credible evidence consistent with guilt" and "give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Lenoir v. State*, 224 So. 3d 85, 90-91 (¶18) (Miss. 2017) (internal quotation mark omitted). Additionally, this case was based on circumstantial evidence, meaning there was neither an eyewitness nor a confession to the crime. *Mangum v. State*, 762 So. 2d 337, 344 (¶21) (Miss. 2000). The State is allowed to prove crimes solely by circumstantial evidence, but such evidence must be "sufficient to prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." *Fleming v. State*, 604 So. 2d 280, 288 (Miss. 1992). For a challenge to the weight of the evidence, the reviewing court must "weigh the evidence in the light most favorable to the verdict" and "only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017).

¶23. Willis was charged under section 47-5-193, making the possession of a cell phone in a correctional facility unlawful. Because it was undisputed the cell phone was not in Willis's immediate possession, the State proceeded under the theory of constructive

possession. "Constructive possession is established by evidence showing that the contraband was under the dominion and control of the defendant." *Davis v. State*, 199 So. 3d 701, 704-05 (¶9) (Miss. Ct. App. 2016) (quoting *Roberson v. State*, 595 So. 2d 1310, 1319 (Miss. 1992)). "There must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular contraband and was intentionally and consciously in possession of it." *Id.* at 704 (¶9) (quoting *Glidden v. State*, 74 So. 3d 342, 345-46 (¶12) (Miss. 2011)). "The elements of constructive possession may be proven by circumstantial evidence." *Bates v. State*, 952 So. 2d 320, 325 (¶21) (Miss. Ct. App. 2007) (citing *Martin v. State*, 413 So. 2d 730, 732 (Miss. 1982)).

¶24. Willis argues that he did not have exclusive access and use of his living quarters. Testimony from security officers showed the cell doors to the pod where Willis was housed were open to a common area from 5:00 a.m. until 9:45 p.m. He also claimed to have had a cell mate on July 25—a claim Captain Jenkins denied. Further, Willis argues there was no proof that he had prior knowledge, dominion, or control over the LG cell phone before it was found in an envelope in his cell.

¶25. However, the previously discussed text messages and Facebook messages created on July 25 identifying Willis by name or the alias "Iron Man" all show he was using the cell phone on that date, while incarcerated. It was not necessary for the State to link Willis to the address found on the phone or the name associated with the outgoing Facebook messages ("DiddyChild TwoTymes"). The messages and photographs are sufficient to link Willis to dominion and control of the cell phone. Further, the cell phone was found in

Willis's cell. Captain Jenkins testified Willis occupied the cell alone and was nearby the night the cell phone was found in his cell at 1:00 a.m. Captain Jenkins testified that no other prisoner was outside of his own cell when the cell phone was recovered. Moreover, the jury was not required to believe Willis's testimony that the cell phone was his "cell mate's." "[W]hen the evidence is conflicting, the jury [is] the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Smith v. State*, 163 So. 3d 971, 974 (¶15) (Miss. Ct. App. 2014) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)).

¶26. The jury was properly instructed on actual and constructive possession, as well as circumstantial evidence. Giving the State the benefit of all reasonable inferences, and accepting as true all credible evidence consistent with guilt, there was sufficient evidence to uphold Willis's conviction for possession of contraband. Further, viewing the evidence in the light most favorable to the verdict, the jury's finding Willis guilty of possession of contraband was not so contrary to the overwhelming weight of the evidence that allowing it to stand sanctions an unconscionable injustice. This issue is without merit.

### III. Ineffective Assistance of Counsel

¶27. Willis argues his trial counsel was constitutionally ineffective for failing to object to the admission of the allegedly improperly authenticated digital evidence. "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Swinney v. State*, 241 So. 3d 599, 613 (¶58) (Miss. 2018) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015)). However, the

13

appellate court "will address such claims on direct appeal when '[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the [appellate court] determines that the findings of fact by a trial judge . . . are not needed." *Id.* (alterations in original) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). Appellate courts have "also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (citing *Swinney*, 241 So. 3d at 613-14 (¶¶61-65)). Willis stipulates that the record is adequate for appellate review of this issue; however, the State does not. We find, however, that the claim can be resolved on direct appeal because the record affirmatively shows that Willis's ineffective-assistance-of-counsel claim is without merit.

¶28. To make a successful ineffective-assistance-of-counsel claim, Willis must show that "(1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Id.* at (¶31) (quoting *Ashford v. State*, 233 So. 3d 765, 779 (¶50) (Miss. 2017)). There is a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Id.* (quoting *Swinney*, 241 So. 3d at 613 (¶60)). Therefore, "defense counsel is presumed competent." *Id.* And even if an error is shown, counsel's performance will only be found deficient "if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.*

¶29. Here, it is undisputed that Willis's counsel did not object to the admission of the

forensic digital report or testimony of Collins about the digital evidence. However, because we found the evidence was properly authenticated and there was no error in its admission, Willis's trial counsel cannot be found deficient for not objecting. Accordingly, this issue is without merit.

## CONCLUSION

¶30. Based on the foregoing, we affirm Willis's conviction and sentence.

¶31. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**